COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                           SUPERIOR COURT DEPARTMENT
                                                       OF THE TRIAL COURT
                                                       CIVIL ACTION NO. 08-5346-BLS2

E. MARK NOONAN,
                    Plaintiff,
v.
                                                       **Hearing Requested**

WONDERLAND GREYHOUND PARK
REALTY LLC, et al.,
                    Defendants

### REPLY MEMORANDUM IN SUPPORT OF MOTION OF ANGLO IRISH BANK CORPORATION PLC TO DISMISS

Pursuant to this Court's Procedural Order Regarding Reply Memoranda in this session, Anglo[1] hereby replies to the Opposition ("Opp.") filed by Noonan to Anglo's Motion to Dismiss the Verified Complaint for failure to state a claim upon which relief can be granted. Briefly, the Reply establishes that:

- Noonan's argument (Opp. at 6-8) that Anglo breached the ICA by loaning an additional $1 million is not supported by the express, unambiguous language of the ICA.

- Noonan's argument (Opp. at 8-10) that Anglo breached the ICA by permitting a "diversion" of Option Agreement funds to Westwood is not supported by the actual language of the ICA, the Subordinated Loan Documents, or any legal duty under the common law of the Commonwealth.

- Noonan fails to effectively rebut Anglo's argument that it did not breach ICA ¶ 13 regarding Noonan's right to purchase the Senior Loan.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in Anglo's Memorandum or in the Opposition.

- On their face, none of the Anglo acts alleged by Noonan supports a claim for violating the covenant of good faith and fair dealing or Mass. G.L. c. 93A.

- The ICA cannot reasonably be read to provide Noonan with recourse for Anglo not exercising its right to cure a default under the Subordinate Loan Documents.

For these reasons, and the reasons stated in Anglo's Memorandum, the Court should dismiss the Complaint as to Anglo with prejudice and assess costs against Noonan.

## ARGUMENT

**A.  Noonan's Argument That Anglo Breached The ICA By Loaning An Additional $1 Million Is Not Supported By The Actual Language Of The ICA.**

Noonan argues, Opp. at 6-8, that Anglo breached the ICA by loaning an additional $1 million. However, in order to articulate such an argument, he impermissibly imputes words and phrases to the ICA that are <u>not</u> there and ignores words and phrases that <u>are</u> in the ICA. As a result, the Court must reject his tortured reading of the ICA and rule, as a matter of law, that the relevant provisions of the ICA are not ambiguous and do not support Noonan's allegations of breach.

Noonan in effect argues that the phrase "Senior Loan Documents" at the end of the first sentence of ICA ¶ 2, "and to any and all advances heretofore made or hereafter made under the Senior Loan Documents pursuant to the terms thereof," should be read as if it said "<u>original</u> Senior Loan Documents <u>without regard to amendments, modifications, extensions, replacements or renewals thereof, despite the express subordination of Subordinate Lender's rights to any and all such amendments, modifications, extensions, replacements or renewals</u>." If the parties had intended to modify the meaning of Senior Loan Documents in this manner, they could have said so. Since they did not, the Court should not impute these omitted words and concepts into the language to which the parties actually agreed.

Moreover, such an imputed rewording of that phrase is inconsistent with existing provisions of the other loan documents, such as the definition of "Note" in the Senior Mortgage (both of which are within the ICA's definition of Senior Loan Documents), which reads:

> <u>Note</u>: The Promissory Note of Mortgagor of even date herewith in the principal amount of EIGHT MILLION EIGHT HUNDRED TWENTY THOUSAND DOLLARS (US$8,820,000) payable to the order of Mortgagee <u>and any and all extensions, renewals and modifications thereof and substitutions therefor, **whether of the same amount or otherwise**</u>.

Senior Mortgage (VC Exh. 2) at 3 (emphasis added). This definition reflects an understanding of the parties that the principal amount of the Senior Note could vary from the original amount and that extensions, renewals and modifications of the original note that caused such variations were intended to be included in the definition. In keeping with the principle of contract interpretation that the various provisions of the documents should be interpreted consistently with one another, Restatement 2d of Contracts § 202(5), the Court should reject the gloss Noonan advocates be put on the phrase "Senior Loan Documents."[2]

Noonan himself recognized the potential that the principal amount of the Senior Note might be increased by amendment or modification, as reflected in the definition of "Capital Event," in of Noonan's Subordinated Note, to include:

> (ii) any equity financing, debt financing or combination thereof by either the Borrower or Westwood which generates in excess of ... $8,820,000.

---

[2] Likewise, the Court should reject Noonan's contention that there is any ambiguity regarding the amount to which his mortgage is subordinate. *See* Opp. at 8 n.4. An ambiguity is not created simply because a controversy exists between the parties each favoring an interpretation contrary to the other's. *Center for Blood Research v. Coregis Ins.*, 305 F.3d 38, 41 (1st Cir. 2002). "Nor does the mere existence of multiple dictionary definitions of a word, without more, suffice to create an ambiguity, for most words have multiple definitions." *Id.* (citing *Citation Ins. Co. v. Gomez*, 688 N.E.2d 951, 953 (Mass. 1998)). Further, ambiguity does not exist solely because the parties disagree as to the meaning of a provision. *Brazas Sporting Arms v. Am. Empire Surplus Lines Ins.*, 220 F.3d 1, 5 (1st Cir. 2000) (citing *Continental Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 374 (1st Cir. 1991)); *Crestview Country Club v. St. Paul Guardian Ins.*, 321 F. Supp. 2d 260, 263 (D. Mass. 2004) ("a mere difference of opinion between the two parties as to the meaning of a word or phrase, however, does not create ambiguity").

VC Exh. 3 at 1. Noonan alleges that the $1 million advance constituted such a "Capital Event," VC ¶ 57, the consequence of which would be that the borrower owed a "Mandatory Prepayment" in the amount of $1 million. VC Exh. 3 at 1. Even though Noonan, as a party to the Subordinated Note, contemplated the possibility of such additional debt financing, the ICA <u>did not</u> carve out additional debt financing as an exception to the debt to which the Subordinated Indebtedness was subordinate in ICA ¶ 2, or to the provisions postponing the time when Noonan could receive the Mandatory Prepayment and requiring him to refrain from enforcement action, in ICA ¶¶ 3, 4, 6 and 10. The fact that the ICA did not except such an event, when its potential occurrence was clearly recognized at the time the ICA was signed, means that it was not intended to be such an exception.

Likewise, Noonan's attempt to find a breach of the ICA in the 2008 amendment of the Loan-to-Value Ratio Covenant in the Senior Mortgage is without merit. Again, the fact that the ICA did not except amendments to the Loan-to-Value Ratio Covenant from the kinds of amendments to which Noonan agreed to be subordinated, ICA ¶ 2(b), must mean that no exception was intended. The ICA did not preclude the borrower and Anglo from amending that Covenant and Noonan cannot simply wish such a new term into the ICA.

Accordingly, the Court should rule as a matter of law that Anglo did not breach the ICA by making the additional advance or by amending the Loan-to-Value Covenant.

**B.     Anglo's Tangential Connection With The Borrower's Option Agreement Did Not Breach The ICA Or Any Other Legal Obligation.**

Noonan cannot possibly sustain a cause of action against Anglo based upon its tangential connection with the Option Agreement Deal. In the first instance, nowhere in the Complaint does Noonan allege any involvement by Anglo. VC ¶¶ 78-96. This alone precludes any

recovery against Anglo arising from the Option Agreement, and the Complaint should be dismissed on all counts to that extent.

There is also no legal basis for recovery on Noonan's *new* allegations against Anglo as set forth in the Opposition. In a desperate attempt to save his claims, Noonan now asserts that Anglo "participated" in the Option Agreement Deal and wasted Noonan's underlying security by (1) "blessing" the transaction; (2) "agreeing" that the balance of the payments could be "diverted" to Westwood; and/or (3) demanding that a portion of the proceeds be escrowed for interest payments. Opp. at 8-9. Even if Noonan amended his Complaint to include these allegations, and they were accepted as true by the Court, there is no provision of the ICA forbidding Anglo's knowledge of such a transaction by the Borrower or creating any affirmative duty to affirmatively intervene on Noonan's behalf.

There is also no common law duty by which Anglo was required to police the Borrower's activity, or intervene in its affairs, to protect Noonan's interests as a junior lender. While Noonan cites case law from states other than Massachusetts (*Ranier*, *Banker's Trust* and *Gluskin*) describing a senior lender's duty not to damage the underlying security for junior lenders, these cases are easily distinguishable. In each instance it was the *senior lender's* affirmative actions that proximately caused the reduction in value of the junior lenders' security interest. *See* Opp. at 11. None goes so far as to impose upon the senior lender an affirmative duty to intervene in the business dealings of the *borrower and third parties* for the benefit of junior lienholders. Moreover, Noonan does not allege (nor can he) that Anglo has done anything to damage the security for his underlying loan.

This nonexistent duty is the gravamen of Noonan's new allegations against Anglo with respect to the Option Agreement. In this case, however, it was the Borrower and a third party,

who executed the Option Agreement and allegedly reduced the value of Noonan's security – not Anglo. Even presuming, without admitting, that Anglo "blessed" the transaction and "agreed" that the Borrower could "divert" Option payments to Westwood (rather than repaying its previous debt), as asserted by Noonan, Noonan cites no common law or contractual duty requiring Anglo to step in and regulate the Borrower's activity on Noonan's behalf.[3]

Moreover, Anglo's only affirmative action involving the Option Agreement *protected* Noonan's interests as opposed to harming them; Anglo's requirement that the Borrower escrow Option Agreement funds for interest payments helped to minimize the Borrower's Senior Debt to Anglo and thereby increased the amount of security for Noonan as a junior lienholder.

Accordingly, as Anglo's acts now alleged by Noonan relative to the Option Agreement do not create any liability or damage, all claims against Anglo should be dismissed to the extent based upon the Option Agreement Deal.

**C.    Noonan Has Not Effectively Countered Anglo's Argument That It Did Not Violate Noonan's Right To Purchase The Senior Loan.**

In Section C of his Opposition, Noonan has merely restated the allegations of paragraphs 71-74 of the Complaint that Anglo breached paragraph 13 of the ICA by failing to acknowledge Events of Default, failing to honor Noonan's request to purchase the loan and including the August 2006 advance in the purchase price. Opp. at 10. This "argument" must be rejected because Noonan has conceded that Anglo has not declared an Event of Default, Opp. at 9, which is a precondition to his right to purchase the Senior Loan Documents. Since his right to purchase

---

[3] Noonan also agreed in his Second Mortgage Note with the Borrower that his loan funds could be used for Westwood purposes generally and did not restrict the funds to repayment of the Senior Loan by Anglo or enhancement of the property. VC Exh. 3 at 2. Therefore, Noonan cannot now complain that funds from another financier are being used for a purpose identical to his loan proceeds – much less require that Anglo guard against the same.

the Senior Loan Documents was not ripe, Anglo cannot be in breach for not selling him the Senior Loan Documents.

Even if his right to purchase was ripe, however, Noonan cannot maintain an action against Anglo for breach because he has never tendered – and the Complaint does not allege that he tendered – payment of any part of the purchase price. "Before either party can sue on a [real estate] contract, that party must first put the other party in default by tendering or offering to tender performance." 13 Williston on Contracts § 38:8 at 407 (4th ed. 2004).[4]

The existence of a dispute as to the price for purchase of the Senior Loan is irrelevant, as Noonan does not claim to have tendered any purchase price, either in the amount Anglo stated in its September 3 letter, McArdle Aff. Exh. 4, or in the amount Noonan now contends was the correct purchase price. Noonan's September 2 letter, VC Exh. 11, does not constitute a tender or even express a clear intent to exercise the right to purchase the loan. Rather, it requests documents and information and concludes "Upon receipt and satisfactory review of the above-requested documents ..., I will contact you to discuss exercising my right to make the purchase." The only fair reading of his letter is that he was contemplating a possible exercise but was not then doing so. The letter does not satisfy the prerequisite to suit – manifesting a clear offer of performance and demonstrating that the offeror is ready, willing and able to perform. *See Mayer v. Boston Metropolitan Airport, Inc.,* 355 Mass. 344, 354 (1969); *Beck v. Doore,* 319 Mass. 707, 710 (1946); *Hunt v. Bassett,* 269 Mass. 298, 302 (1929); *Hapgood v. Shaw,* 105 Mass. 276, 279 (1870). Thus, any claim based upon Anglo's not having sold the Senior Loan Documents to Noonan must be dismissed.

**D.    None Of Noonan's Allegations Amounts To A Breach Of The Covenant Of Good Faith And Fair Dealing Or Violation of G.L. c. 93A.**

---

[4] *Accord, Cobb v. Library Bureau of N.J.,* 264 Mass. 431, 435 (1928); *Ward v. Doucette,* 1 Mass. App. Ct. 842 (1973).

Noonan has not alleged sufficient facts to state a claim against Anglo for breach of the covenant of good faith and fair dealing or G.L. c. 93A. The covenant of good faith and fair dealing requires that a contracting party refrain from disingenuous activity for the purpose of preventing the other from receiving the benefit of its bargain. *See Anthony's Pier Four, Inc. v. HBC Assoc's*, 411 Mass. 451, 472-73 (1991). In *Anthony's Pier Four*, the owner of Boston Harbor waterfront property (Anthony's Pier Four) entered into two commercial development contracts with HBC in connection with the Fan Pier area. *Id*. at 455. Anthony's Pier Four was simultaneously developing the site abutting Fan Pier, and so it retained certain approval rights with respect to HBC's development plans. *Id*. The Court found that while Anthony's Pier Four had no true objection to HBC's design plan, it refused to give its approval in order to jeopardize the project and thereby extract new financial concessions from HBC. *Id*. at 472. The Court found that this breached the covenant of good faith and fair dealing. *Id*. at 472-73.

Unlike in *Anthony's Pier Four*, Noonan fails to allege a single fact demonstrating that Anglo's actions were made for the *purpose* of jeopardizing the Second Loan in order to extract benefits *from Noonan*. In addition, Anglo's $1MM loan increase and adjustment of the Loan-to-Value ratio were modifications *pre-approved* by Noonan under ICA ¶2. Noonan's express acceptance of the risk that the Senior Loan Documents would be modified, and the absence of any allegation that Anglo made these modifications for the *purpose* of frustrating Noonan's benefits under the ICA, fails to support a breach of the covenant of good faith and fair dealing arising from the ICA (and the ICA is the only alleged privity between Noonan and Anglo). Moreover, escrowed interest and real estate taxes paid from the Option payments actually helped to preserve Noonan's junior security interest by reducing the Borrower's exposure to Anglo. *See*

*Gulesarian v. Fields*, 351 Mass. 238, 244-45 (1966). Accordingly, Count V should be dismissed.

For the same reason, the Court should also dismiss Noonan's G.L. c. 93A Count XVI against Anglo. Noonan has failed to plead specific facts to support that claim, as is now required by *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 634-36 (2008). *See* VC ¶¶ 199-204. Indeed, the only facts remotely of a bad-faith nature now asserted against Anglo fail to even support a claim for the breach of the covenant of good faith and fair dealing. *See supra*. Without more, Count XVI should be dismissed as to Anglo under the standard of *Iannacchino*.

E. **The ICA Does Not Afford Noonan Recourse Against Anglo For Not Exercising Its Right To Cure A Default Under The Subordinate Loan Documents.**

Noonan quotes ICA ¶ 8, which grants Anglo "the right to cure any default under any of the Subordinate Loan Documents," and then astonishingly asserts that, in order to give meaning to this grant, Noonan must have a remedy against Anglo if Anglo fails to exercise its right to cure. Opp. at 12. Although Noonan cites *Polito v. School Committee,* 68 Mass. App. Ct. 393, 396 (2007), he ignores its holding that the court "'must interpret the words in a contract according to their plain meaning.'" *Id.* at 397. The plain meaning of "right" is the opposite of "duty" or "liability." Merriam-Webster's Online Dictionary defines "right" as "2: something to which one has a just claim; as **a:** the power or privilege to which one is justly entitled <voting *rights*> <his *right* to decide>." Black's Law Dictionary defines "liability" as:

> liability, n. 1. The quality or state of being legally obligated or accountable; legal responsibility to another or to society, <u>enforceable by civil remedy</u> or criminal punishment <liability for injuries caused by negligence>. -- Also termed legal liability; responsibility; subjection. 2. (often pl.) A financial or pecuniary obligation; DEBT <tax liability> <assets and liabilities>. "The term 'liability' ... is the synonym of duty, <u>the correlative of right; in this sense it is the opposite of privilege or liberty</u>. If a duty rests upon a party, society is now commanding performance by him and threatening penalties.

Black's Law Dictionary (8th ed. 2004) (emphasis added). Noonan has not cited, and cannot cite, any definition or legal authority that would afford him a remedy for another person's declining to exercise a right he himself granted, as if a right were equivalent to a duty or liability.

Although Noonan states that "the interplay of Paragraph 8 and Paragraph 6 of the [ICA] render [sic] the scope of undertaking not to sue ambiguous and preclude [sic] dismissal of Mr. Noonan's claims," Opp. at 12, he has not articulated a reasonable interpretation of either paragraph that contradicts the one Anglo has advocated. A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons differ as to which meaning is the proper one. *Center for Blood Research v. Coregis Ins.*, 305 F.3d 38, 41 (1st Cir. 2002) (*citing Cody v. Conn. Gen. Life Ins Co.*, 439 N.E.2d 234 (Mass. 1982)). It must be shown that reasonably intelligent persons would differ as to which one of two or more meanings is the proper one. *Jefferson Ins. Co. of N.Y. v. City of Holyoke*, 503 N.E.2d 474, 476 (Mass. App. Ct. 1987). Noonan has not made such a showing.

Thus, the Court should disregard Noonan's Opposition insofar as he argues for a limitation on the provisions of the ICA precluding his commencement of this action.

## CONCLUSION

For the foregoing reasons, as well as those stated in Anglo's Memorandum, the Court must dismiss the Complaint as to it and assess costs against the plaintiff.

ANGLO IRISH BANK CORPORATION PLC
By its Attorneys,

*/s/ Deborah S. Griffin*
Deborah S. Griffin, BBO # 211460
Jeff N. Bernarducci, BBO # 657454
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

# 5966121_v4